AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: s/Drew E. Davis 4/16/26

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

FILED APR 16 2026 JOAN KANE, CLERK U.S. DIST. COURT, WESTERN DIST. OKLA. BY ______, DEPUTY

afm 4/16/26

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
A black Apple iPhone SE in a pink case, an Apple iPhone in a black case, and a black Apple iPhone 12 currently located at the Drug Enforcement Administration Office within the Western District of Oklahoma

Case No. MJ-26- 186 -ALM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Controlled Substances |
| 18 U.S.C § 924(c)(1)(A) | Possession of Firearms in Furtherance of a Drug-Trafficking Crime |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Brook Wilson, Special Agent DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/14/26

[signature: Amanda L. Maxfield]
*Judge's signature*

City and state: Oklahoma City, Oklahoma

AMANDA L. MAXFIELD, U.S. MAGISTRATE JUDGE
*Printed name and title*

**THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **A BLACK APPLE IPHONE SE IN A PINK CASE, AN APPLE IPHONE IN A BLACK CASE, AND A BLACK APPLE IPHONE 12 CURRENTLY LOCATED AT THE DRUG ENFORCEMENT ADMINISTRATION OFFICE WITHIN THE WESTERN DISTRICT OF OKLAHOMA** | **Case No. M-26- -ALM** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH AND SEIZURE WARRANT**

I, Brook J. Wilson, a Special Agent (SA) of the Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

**INTRODUCTION AND TASK FORCE OFFICER BACKGROUND**

1. I am a Special Agent with the Drug Enforcement Administration (DEA) currently assigned to the Oklahoma City, Oklahoma District Office. As such, I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and seizures for, offenses enumerated in the Controlled Substances Act Title 21, United States Code.

2. I have been a Special Agent since October of 2014, having previously worked as a United States Border Patrol Agent from 2006 until 20014. After successfully completing the DEA training academy at Quantico,

Virginia, I was assigned to the Sierra Vista Resident Office in Sierra Vista, Arizona. In October of 2019 I was transferred and currently work in the Oklahoma City District Office in Oklahoma City, Oklahoma. I am currently assigned to the SPEAR unit.

3. Your Affiant has had conversations with and been in the company of other experienced local, state and federal law enforcement officers as well as prosecuting attorneys representing both state and federal systems concerning narcotics and dangerous drug trafficking activities and criminal violations.

4. Also, your Affiant has worked in the company of other experienced law enforcement officers and has discussed their investigative techniques and experiences with them. Through conducting investigations, I have become familiar with the clandestine business practices of drug traffickers.

5. Your Affiant has received formal training in the detection and recognition of criminal activity, including narcotic and money laundering related offenses. I have also been involved in numerous narcotic investigations on the state and federal level which have resulted in apprehension of persons on narcotic, and narcotic-related, charges during my law enforcement career.

6. As a Special Agent, I have learned the following:

a. traffickers in controlled substances frequently maintain, on hand, large amounts of United States currency in order to maintain and finance their ongoing illicit business;

b. it is common practice for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transportation, ordering, sale, and distribution of controlled substances; that the aforementioned books, records, receipts, notes, ledgers, etc., are maintained for extended periods of time at a place where traffickers have ready access to them;

c. it is common practice for drug traffickers to hide contraband, proceeds of drug sales and records of drug transactions in secure locations within their residence, their vehicles, their business, or other locations which they maintain dominion and control over, for ready access and to conceal these items from law enforcement authorities;

d. it is common for persons involved in trafficking of controlled substances to maintain evidence pertaining to their obtaining, secreting, transferring, concealing, and/or expenditure of proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers' checks, bank checks, safe deposit keys, and money wrappers;

e. these items are often maintained by drug traffickers within their residences, in safes, vehicles, businesses, or other locations over which they maintain dominion and control;

f. that experienced, well-organized, drug traffickers often utilize electronic equipment such as computers, digital pagers, telex machines, facsimile machines, cellular telephones, electronic voice mail, and telephone answering machines to generate, transfer, count, record, and/or store drug related information or information related to drug proceeds;

g. when drug traffickers amass large amounts of proceeds from the sale of drugs, they commonly attempt to legitimize these profits through money laundering activities;

h. to accomplish these goals, drug traffickers often utilize domestic and international banks and their attendant services, securities brokers, professionals, such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency;

i. the sale of controlled substances usually generates large quantities of U.S. currency in small denominations;

j. it is common for drug traffickers to physically handle and count the monies after receiving it in exchange for the narcotics, thereby leaving residue traces of controlled substances on the monies;

k. drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization;

l. drug traffickers often take, or cause to be taken, photographs and videos of themselves, their associates, their property and their product; that these drug traffickers usually maintain these photographs within their possession, in their residences, vehicles, businesses, or other locations which they maintain dominion and control over;

m. money launderers often register multiple businesses which deal in cash transactions to filter the illegal proceeds, and oftentimes, these businesses are listed to drop boxes and the businesses themselves do not have a physical address;

n. experienced and well-organized drug traffickers and their associates often purchase and/or title their assets in

fictitious names, aliases or the names of relatives, associates, or business entities, to avoid detection of these assets by law enforcement agencies; and although these assets are in other names, traffickers commonly actually continue to use these assets and exercise dominion and control over them; and

o. those engaged in manufacturing and distributing controlled substances often possess firearms to promote, accomplish, advance, and achieve their goal of distributing controlled substances for profit.

7. The information contained in this Affidavit is submitted for the limited purpose of establishing probable cause to secure a search warrant for a: (1) a black in color Apple iPhone SE in a pink case (**TARGET DEVICE 1**); (2) a Apple iPhone cellular telephone in a black case (**TARGET DEVICE 2**); and (3) a black in color Apple iPhone 12 (**TARGET DEVICE 3**) as described further in **Attachment A** (physical description), for evidence of violations of federal law, to wit: (1) 21 U.S.C. § 846, drug conspiracy; (2) 21 U.S.C. § 841, possession with intent to distribute controlled substances; and (3) 18 U.S.C. § 924(c)(1)(A), possession of firearms in furtherance of a drug trafficking crime, as described further in **Attachment B** (description of items to be seized). The **TARGET DEVICES** are currently in DEA custody at 901 NE 122nd Street, Suite 210, Oklahoma City, Oklahoma 73114, within the Western District of Oklahoma.

8. This Affidavit is based upon my personal investigation and upon information received from other law enforcement officers and agents and may

not include all evidence or information available or of all facts known to me relative to this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## BACKGROUND REGARDING CELLULAR DEVICES

9. Based upon my training and experience, I am aware:

a. individuals involved in trafficking illegal narcotics and bulk cash smuggling often use cellular phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal narcotics and/or drug proceeds. Such cell phones and their associated memory cards commonly contain electronically stored information constituting evidence, fruits, and instrumentalities of drug trafficking and bulk cash smuggling offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, messaging applications, and videos;

b. drug dealers and bulk cash smugglers often switch phones in order to avoid detection from law enforcement, and that drug dealers and bulk cash smugglers often have multiple phones that they use for different co-conspirators in order to separate their drug dealing and/or bulk cash smuggling;

c. drug dealers often keep old cellular telephones no longer in use in order to save telephone numbers of other co-conspirators, as well as other relevant information including text messages and photographs;

d. individuals involved with sending/receiving controlled substances through the U.S. Mail will often utilize their cellular phones to access the internet in order to search for parcel tracking numbers and or to receive parcel tracking status updates identifying the arrival of suspect parcels;

e. drug dealers and drug users oftentimes have stored photographs, videos, and/or text and voice messages associated with the use and distribution of controlled substances and proceeds derived therefrom for their own records and/or for the purpose of furthering their distribution activity maintained on their cellular telephones and other electronic handheld devices;

f. drug distributors/consumers and bulk cash smugglers will often use code words and phrases and vague references in order to discuss their plans and prevent anyone from overhearing their conversations and from recognizing that the conversations concern criminal activity;

g. prospective drug purchasers, recipients, and/or users will often use telephones to contact drug distributors to obtain permission to come to the distributor's location *i.e.* his business, residence, *etc.*, to obtain drugs; similarly, bulk cash smugglers will often telephone their co-conspirators to coordinate the delivery of the bulk cash proceeds to be smuggled; and

h. drug distributors will often have "salespeople" bring prospective drug purchasers to him or her, and these salespeople will receive payment in cash, or in kind (a quantity of drugs), for bringing drug users/buyers to the distributor. These "salespeople" often use the telephone to contact the distributor by voice or text message to arrange these meetings.

## PROBABLE CAUSE

10. In January of 2026, the DEA Oklahoma City District Office Tactical Diversion Squad received information about the shipment of excipient powder (pill binding powder) that was being sent to "Andy Anderson" at 13802 Gaddy Rd., Shawnee, Oklahoma. Investigators contacted the Federal

Bureau of Investigation (FBI) who requested information from LFA Machines out of Fort Worth, Texas, in reference to this shipment. Law enforcement learned that in December of 2025, multiple parts of a TDP5 pill press were ordered by "Andy Anderson" at 13802 Gaddy Rd., Shawnee, Oklahoma, including: an ejection guard; an upper drift pin assembly; a lower assembly timing rod runner; and a upper drift pin mounting block, amongst other parts. Additionally, law enforcement confirmed that "Andy Anderson" had ordered 10 kilograms of white excipient powder to the same address.[1]

11. The phone number for the deliveries was labeled "330-428-7215" ("x7215"), and the email utilized was "swolehillbilly@proton.me." A subpoena was sent to Verizon Wireless for "x7215" for subscriber and call information. Data received from Verizon Wireless stated that the subscriber was Mary Greschaw at 1295 S. 15th St., Sebring, Ohio. A search by the FBI of this number identified a traffic accident report in Alliance, Ohio. In this accident report, "x7215" was listed as the contact number for Lukasz Greschaw at the same address, 1295 S. 15th St., Sebring, Ohio. Additionally, investigators identified that "x7215" is associated with a Cash App account with the name

[1] Based on my training and experience, I know that 10 kilograms of excipient powder can produce approximately 100,000 tablets with 1 kilogram of excipient powder producing approximately 10,000 tablets based on an average illicit tablet weight of 0.1 grams.

$LukeGreschaw. Based on law enforcement databases, Greschaw resides in Ohio. Investigators could find no ties between Greschaw and 13802 Gaddy Rd., Shawnee, Oklahoma.

12. Open source and law enforcement databases were utilized to identify the occupants of the 13802 Gaddy Rd., Shawnee, Oklahoma, as Gary Brown, Elizabeth Brown, Seth Walker and Ashlynn Vaught.

13. On February 17, 2026, and February 24, 2026, trash pulls were conducted at 13802 Gaddy Rd., Shawnee, Oklahoma. During these trash pulls, various documents were discovered confirming that Gary Brown, Elizabeth Brown, Seth Walker, and Ashlynn Vaught were utilizing the residence. Additionally, during the trash pull on February 24, 2026, investigators located a black trash bag containing multiple documents and shipping labels for "Roy Anderson."

14. Investigators contacted Customs and Border Protection (CBP) for information about shipments being sent to 13802 Gaddy Rd., Shawnee, Oklahoma. CBP was able to identify a shipment, manifested on January 31, 2026, that was being shipped to 13802 Gaddy Rd., Shawnee, Oklahoma, that contained a description of "ready mix binder," that was being

shipped to "James McGill."[2] Based on my training and experience, I know that a ready mix binder can be utilized in pill presses to press tablets.

15. On February 6, 2026, investigators, via electronic surveillance observed a FedEx truck deliver the "ready mix binder" parcel to 13802 Gaddy Rd., Shawnee, Oklahoma. Shortly thereafter, investigators observed a white GMC pickup arrive and saw the driver place two boxes into the bed of the pickup. One of the boxes appeared to be the same size and shape of the box delivered to 13802 Gaddy Rd., Shawnee, Oklahoma. Investigators later identified this vehicle, via registration records, as belonging to Roy Anderson at 125 Pinkston St., Shawnee, Oklahoma 74801.

16. On February 7, 2026, officers with the Shawnee Police Department responded to 125 Pinkston St., Shawnee, Oklahoma 74801, due to a domestic violence incident between Roy Anderson and Elizabeth Anderson. During this response, officers spoke with Elizabeth Anderson who told officers that Roy Anderson was utilizing an outbuilding on the property at 125 Pinkston St., Shawnee, Oklahoma 74801, to operate a pill press and manufacture anabolic steroids. Elizabeth Anderson referred to this as an "underground lab," and

---

[2] Investigators believe that the name "James McGill" is fictitious and was being utilized due to it being the name of a character from "Better Call Saul," as part of the "Breaking Bad" franchise, a show that revolves around the distribution of illicit drugs.

stated that she believed it to be illegal. Elizabeth Anderson stated that she had personally observed the equipment in the outbuilding and that she had observed Roy Anderson package and ship product from the outbuilding. At that time, officers did not inspect the outbuilding. Law enforcement has confirmed that this residence is owned by Roy and Elizabeth Anderson.

17. Investigators established surveillance, both physically and electronically, on 13802 Gaddy Rd., Shawnee, Oklahoma, on February 18, 2026. At approximately 9:40 a.m., investigators observed Gary Brown depart the residence in a blue Chevrolet Silverado, with Oklahoma license plate RZA668, registered to Gary Brown at 13802 Gaddy Rd., Shawnee, Oklahoma. Investigators followed Gary Brown as he drove to a BancFirst location at 3443 Kickapoo St., Shawnee, Oklahoma, and then back to 13802 Gaddy Rd., Shawnee, Oklahoma. At approximately 11:24 a.m., a box truck for the company OKX Logistics arrived at the residence. Investigators observed Gary Brown drive the same blue Chevrolet Silverado out onto Gaddy Road and back up to the rear of the box truck. Investigators observed the transfer of a large wooden crate from the box truck into the bed of the blue Silverado. At approximately 6:30 p.m., via electronic surveillance, investigators observed the blue Silverado, with the crate strapped down in the bed of the truck, depart

13802 Gaddy Rd., Shawnee, Oklahoma, only to return later in the evening with the crate no longer in the bed of the pickup.

18. Investigators issued an administrative subpoena to OKX Logistics for information related to the shipment received by Gary Brown. OKX Logistics provided documentation to investigators that identified the recipient of the parcel as "Gary Brown at 13802 Gaddy Rd., Shawnee, Oklahoma." The package information was "Mixing Machine" with a gross weight of 278.00 lbs. I know, based on my training and experience, that industrial mixing machines are often used to combine excipient powder with illicit substances for further processing within a pill press operation when dealing with large amounts of excipient powder.

19. On February 24, 2026, investigators established surveillance at 125 Pinkston St., Shawnee, Oklahoma 74801. That day, investigators observed a white GMC pickup, driven by Gary Brown, depart the property coming from the direction of a large outbuilding on the west side of the property. This GMC pickup was previously registered to Roy Anderson and seen on surveillance on February 6, 2026. However, on February 20, 2026, the registration was changed to Oklahoma license plate G6329T registered to Gary Brown at 13802 Gaddy Rd., Shawnee, Oklahoma.

20. On March 2, 2026, investigators were notified by CBP of an incoming shipment of approximately 32 kilograms of binder-powder (used in the manufacturing of illicit tablets) that was shipped from Budapest, Hungary, to 13802 Gaddy Rd., Shawnee, Oklahoma, with the name "James McGill" as the recipient of the shipment.

21. On March 9, 2026, investigators established surveillance on 13802 Gaddy Rd., Shawnee, Oklahoma, in anticipation of the delivery of this shipment. At approximately 11:15 a.m., two parcels were delivered by FedEx. A review of the FedEx package tracking online database positively identified the two parcels as being the expected shipment of binder-powder. After being delivered, investigators observed the packages placed onto the open tailgate of a Chevrolet Avalanche in the driveway of 13802 Gaddy Rd., Shawnee, Oklahoma. The parcel remained on this tailgate until the arrival of the aforementioned white GMC pickup with Oklahoma license plate G6329T registered to Gary Brown. Shortly after arriving, the white pickup departed and the parcels were no longer seen on the tailgate of the Avalanche. Investigators conducted mobile and electronic surveillance on the white pickup and verified that it arrived at the entrance of 125 Pinkston St., Shawnee, Oklahoma 74801, approximately 20 minutes after departing from 13802 Gaddy Rd., Shawnee, Oklahoma.

22. The United States Postal Service identified a Post Office Box, #321, operating at the "E-Z Ship and Copy" store at 1530 N. Harriston St., Shawnee, Oklahoma, that had been opened by Roy Anderson. Between March 19, 2025, and February 20, 2026, the USPS identified approximately 109 shipments to this the #321 P.O. Box with the primary receiver being listed as "Andy Anderson," however other recipients of note were "James McGill" and "Roy Anderson." Investigators searched the names and locations of the shippers of the parcels to this P.O. Box and determined that in many circumstances, there was no evidence that the name of the shipper and the address provided of that shipper were legitimate.

23. On March 12, 2026, USPS Postal Inspectors seized two parcels being sent to Andy Anderson at 1530 N. Harrison St. #321, Shawnee, Oklahoma 74804.

a. The shipper of PARCEL 1 was listed as being from Hong Kong with a return address of "MG ZF, 1782 W. 2nd St. Dock 4/5/6, Pomona, CA 91766." Investigators determined that this was not a valid address and that the sender's name, "MG ZF," could not be associated with this address.

b. The shipper of PARCEL 2 was listed as, "Shipping Dept, 4351 Hamilton St., Omaha, NE 68131." A search of public databases listed the possible tenant of this location as "Recycling Connections Inc."

24. USPS Postal Inspectors were able to obtain federal search warrants to search both parcels on March 19, 2026, in the Western District of

Oklahoma. *See* MJ-26-138-STE and MJ-26-139-STE. Inspectors searched the parcels on the same date.

25. PARCEL 1 contained >250 small vials, commonly used to hold a substance designed to be drawn out with a needle and syringe, that contained a powdered substance that tested presumptively positive for Glycine and Hexafluorobenzene. This powder took up less than half of each individual vial.

26. Based on my training and experience, these vials contain illicit anabolic steroid paraphernalia. I know that the active anabolic steroid is mixed into the glycine mixture, within these vials, which is a common way to distribute anabolic steroids to consumers. Anabolic steroids are classified as a Schedule III substance under the Controlled Substances Act. Moreover, this drug paraphernalia is consistent with the manufacturing of anabolic steroids for distribution as described by Elizabeth Anderson when she interacted with police officers on February 7, 2026.

27. PARCEL 2 consisted of three boxes that further contained blister packs of small white tablets totaling 180 tablets from all the packages. Based on my training and experience, I believe that these boxes were licit pharmaceuticals that were produced in a Central or South American country. The tablets were listed as "Metilfenidato," which is a Schedule II controlled substance commonly used to treat Attention Deficit Hyperactivity Disorder

(ADHD). In the United States this drug is called "methylphenidate." Based on my training and experience, I know that methylphenidate is often combined with pill binder powder in pill presses to create counterfeit MDMA tablets.[3]

28. Based on the contents discovered in both parcels, and the information gained during the course of this investigation, law enforcement believed that Roy Anderson and Gary Brown were utilizing 13802 Gaddy Rd., Shawnee, Oklahoma and 1530 N. Harrison St. #321, Shawnee, Oklahoma, to receive equipment and illicit substances necessary for the production of anabolic steroids and tablets that contained federally controlled substances. Agents further believed these substances were being manufactured at 125 Pinkston St., Shawnee, Oklahoma 74801.

29. On March 25, 2026, this Court issued search and seizure warrants for the residences at 125 Pinkston Rd., Shawnee, Oklahoma 74801 (*see* MJ-26-154-CMS) and 13802 Gaddy Rd., Shawnee, Oklahoma (*see* MJ-26-155-CMS) based on the foregoing information. Those search and seizure warrants authorized the search of the respective premises—including the main residence, all outbuildings, vehicles, and the entirety of the curtilage—and the

[3] Based on my training and experience, I know that methylphenidate is a central nervous system stimulant. These stimulants are often substituted for the active ingredients in MDMA due to the similarities of the stimulant effects of both substances, and the inexpensive nature of these types of central nervous system stimulants.

seizure of "[a]ll items that constitute evidence, instrumentalities, contraband, and/or fruits of violations of 21 U.S.C. § 841(a)(1) and § 846." *Id.*

30. On March 26, 2026, at approximately 7:30 a.m., law enforcement lawfully executed both search warrants.

31. While executing the search warrant at 13802 Gaddy Rd., Shawnee, Oklahoma, investigators detained suspect Gary Brown. Mr. Brown was advised of his *Miranda* rights and chose to waive those rights. In a post-*Miranda* interview, Brown stated that he was aware that Roy Lee Anderson was producing anabolic steroids on Mr. Anderson's property. Brown also gave investigators permission to conduct a forensic download of his cellular device. Within Brown's cellular device, investigators located multiple messages between Brown and Anderson dating all the way back to **June 7, 2024**. Within these messages, Brown and Anderson discussed the receipt of packages related to the operation of a pill press lab located on Anderson's property.

*<u>The Search of 125 Pinkston Rd., Shawnee, Oklahoma 74801</u>*

32. Inside the residence at 125 Pinkston Rd., Shawnee, Oklahoma 74801, a trailer home, law enforcement located a safe in the bedroom. On top of the safe were what appeared to be boxes of "metilfenidato," a Schedule II controlled substance commonly used to treat Attention Deficit Hyperactivity Disorder (ADHD). In the United States, this drug is called "methylphenidate."

Inside this same safe, investigators found two rifles. One of those two rifles had the moniker, "Swole Hillbilly," on its dust cover.[4] One additional rifle was located elsewhere in the bedroom.

33. In the living room of the residence, law enforcement located a money counter and a black in color Apple iPhone SE in a pink case (**TARGET DEVICE 1**) which was powered on.

34. In the kitchen of the residence, investigators located an Apple iPhone cellular telephone in a black case (**TARGET DEVICE 2**), powered on. Investigators noted that **TARGET DEVICE 2** appeared active and that the home screen had multiple notifications activities on the cell phone. Additionally, investigators located another cellular telephone, a black in color Apple iPhone 12 (**TARGET DEVICE 3**), powered off, in the kitchen. Each device was located in the open, not stored away, and appeared to be operational.

---

[4] The email address "swolehillbilly@proton.me" was identified as being associated with the shipment of multiple parts of a TDP5 pill press in December 2025 which were ordered by "Andy Anderson" at 13802 Gaddy Rd., Shawnee, Oklahoma, including: an ejection guard; an upper drift pin assembly; a lower assembly timing rod runner; and a upper drift pin mounting block, amongst other parts. Additionally, law enforcement confirmed that "Andy Anderson" had ordered 10 kilograms of white excipient powder to the same address. *See* Paragraphs 10, 11.

35. In a Dodge Challenger parked outside the residence, law enforcement located one pistol. The Dodge Challenger is registered to Roy Anderson.

36. Inside the shed on the property, which is located approximately 75 yards from the residence, law enforcement located 5 pill press machines, one encapsulating machine, multiple pieces of smaller equipment used in the production of illicit pills, and approximately 50 kilograms of suspected anabolic steroid/testosterone cypionate powder, pills and liquid, which are Schedule III controlled substances. Right next to one of the pill presses, law enforcement located a pistol. The finished products of the lab were labeled as "purepharma," as the brand of the product. Additionally, in the same room as the pill press operation, investigators located numerous boxes containing sweatshirts that were imprinted with "Purepharma.ph." Investigators accessed this website and noted that it sold illicit substances, including anabolic steroids that that matched what was discovered in the pill press lab. Additionally, the website offered tutorials that included utilizing cryptocurrency for purchases.

37. Based on my training and experience, I know that sales of illicit substances are commonly coordinated by drug distributors via electronic devices such as cellphones. Moreover, the fact that Mr. Anderson appears to have been running an illicit online pharmacy offering the ability for customers

to make payments using cryptocurrency, suggests that electronic devices such as the **TARGET DEVICES** were used as part of Mr. Anderson's illicit drug-dealing business.

38. Additionally, based on your affiant's training and experience, online sales of illicit substances are often coordinated via email, which is often accessed via cellphones.

39. Because the **TARGET DEVICES** are operable and were openly accessible in the main residence in the possession of Roy Anderson, there is probable cause to believe that violations of 21 U.S.C. §§ 846, 841(a)(1), and 18 U.S.C. § 924(c)(1)(A) have been committed by Roy Anderson, and that evidence of these crimes will be located on the **TARGET DEVICES**.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

40. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on electronic devices. This information can sometimes be recovered with forensics tools.

a. *Forensic evidence.* This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.

b. *Nature of examination.* The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

c. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## MANNER OF SEARCH

41. I would note that based upon the affiant's aforementioned training and experience, relevant and/or incriminating text messages, videos, and photographs oftentimes are comingled on cellular telephones and electronic handheld devices with text messages, videos, and photographs which do not have an evidentiary value. However, criminals engaged in communications furthering the nature of their criminal enterprise, in particular with investigations involving the use/distribution of controlled dangerous substances, many of these communications will involve cryptic/guarded and or otherwise coded jargon which is oftentimes utilized to conceal the nature of their illegal communication. As a result, a limited review of the content of each communication will be necessary to determine the nature of the communication and whether it is relevant to that information particularly set forth above within this Affidavit.

42. Searching the electronic handheld devices for the evidence described above may require a range of data analysis techniques. In some cases, it is possible for agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, agents may be able to execute a "keyword" search that searches through the files stored in a computer for special words that are likely to appear only in the materials covered by a warrant. Similarly, officers may be able to locate the materials covered in the warrant by looking for particular directory or file names. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require officers to conduct more extensive searches, such as scanning areas of the devices' memory not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques necessary and available to locate and retrieve the evidence described above.

## AUTHORIZATION REQUESTS

43. Based on the above information, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a) (1), 846, and 18 U.S.C. § 924(c) have occurred, and that evidence, fruits, and instrumentalities of these offenses are located on the **TARGET DEVICES**. Therefore, I respectfully request that this Court issue a search warrant for the **TARGET DEVICES**, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**.

BROOK WILSON
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me this 16th day of April, 2026.

AMANDA L. MAXFIELD
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is:

1. a black in color Apple iPhone SE in a pink case, seized from the living room at Roy Anderson's residence during the lawful execution of a search warrant;

2. an Apple iPhone in a black case, seized from the kitchen at Roy Anderson's residence during the lawful execution of a search warrant; and

3. a black in color Apple iPhone 12, seized from the kitchen at Roy Anderson's residence during the lawful execution of a search warrant.

(hereinafter the **TARGET DEVICES**).

The **TARGET DEVICES** are currently in the possession of the Drug Enforcement Administration (DEA) located at 901 NE 122nd Street, Suite 210, Oklahoma City, Oklahoma 73114, within the Western District of Oklahoma, and are shown in photographs below.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities of criminal violations described in this warrant.




1. Black Apple iPhone SE in a Pink Case (pictured above)



2. Apple iPhone in a black case (pictured above)




**3. Black Apple iPhone 12 (pictured above)**

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

1. All records on the **TARGET DEVICES**, described in **Attachment A**, that relate to violations of 21 U.S.C. § 846, 21 U.S.C. §841(a)(1), and 18 U.S.C. § 924(c)(1)(A) during the period of **June 7, 2024, through the present**, including:

a. any information regarding Roy Lee Anderson's schedule or travel;

b. lists of customers and co-conspirators, and related identifying information including images, videos, and audio recordings;

c. records of communications with customers, co-conspirators, or others regarding the possession, transportation, or distribution of controlled substances, whether such communications be a telephone call, text message (e.g., SMS or MMS), instant message, audio message, video message, or communication through an application stored on the **TARGET DEVICES**;

d. images or videos of drugs and firearms;

e. records detailing the types, quantity, and prices of drugs as well as dates, places, and amounts of specific drug-related transactions;

f. any information related to the sources of drugs, including: names, addresses, phone numbers, or any other identifying information;

g. any information related to the planning and coordination of transporting drugs;

h. any audio recordings, pictures, video recordings, or still-captured images on the **TARGET DEVICES** related to:

i. the purchase, sale, transportation, storage, or distribution of drugs;

ii. the collection, transfer, or laundering of drug proceeds; or

iii. the possession or use of firearms.

i. all bank records, checks, credit card bills, account information, and other financial records;

j. all records related to drug trafficking including internet usage history, package tracking, electronic or internet mail communications, and electronic payment receipts;

k. any location data related to the acquisition, transportation, or distribution of drugs;

l. evidence of user attribution showing who used or owned the **TARGET DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, associated accounts, documents, and browsing history:

1. records of Internet Protocol addresses used,

2. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses, and

3. photographs, logs, phonebooks, saved usernames and passwords, and documents; and

m. contextual information necessary to understand the evidence described in the attachment.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored on the **TARGET DEVICES**.